**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re *Ex Parte* Application of ALEJANDRO
MARTINEZ MR. MARTÍNEZ for an Order to
Conduct Discovery for Use in a Foreign
Proceeding Pursuant to 28 U.S.C. § 1782,

                    Petitioner.

Misc. Case No. M-_____

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN
ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN
PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Tel.: 212.589.4200
Fax: 212.589.4201
*Attorneys for Petitioner*

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................1

    I.     MR. MARTÍNEZ'S INVOLVEMENT WITH THE NON-VIOLENCE
          PROJECT'S INVESTMENT SCHEME ..................................................1

    II.    NVPF PROMISES RE-PAYMENT BUT FAILS TO DELIVER .........................5

    III.   AN INVESTIGATION CONFIRMS FAKE IDENTITIES AND FORGED
          SIGNATURES...................................................................................6

    IV.   NVPF AND NVP MEXICO HAVE ATTEMPTED TO COVER UP THE
          FRAUD..........................................................................................7

    V.     MEXICAN CRIMINAL PROCEEDING .................................................8

ARGUMENT ..................................................................................................9

    I.     PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28
          U.S.C. § 1782...............................................................................10

    II.    THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE
          REQUESTED DISCOVERY ORDER ...................................................13

    III.   THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX
          PARTE*........................................................................................15

CONCLUSION...............................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intern. (USA) Ltd.*, 785 F.Supp.2d 434 (S.D.N.Y. 2011) ............................................................................................. 16

*Brandi-Dohrn v. 1KB Deutsche IndustriebankAG,* 673 F.3d 76 (2d Cir. 2012) ......................... 10

*Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095 (2d Cir. 1995)......................................... 15, 16

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M 19-99, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ........................................................................................ 15

*In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 Misc. 397, 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014)................................................................................ 17

*In re Application of Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ......................................................................................................... 15, 16

*In re Chevron Corp.,* No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010) ................................... 17

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ......................................................... 12, 14, 16

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, 15-mc-417 (LAK) 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ................................................... 17

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ...................................... 12, 14

*Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996).......................................... 9

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004) .............................. 14

**Statutes**

28 U.S.C. § 1782.............................................................................................................. *passim*

**Other Authorities**

BBVA Press Release, April 24, 2019 .................................................................................. 11, 12

Petitioner Alejandro Martínez Araiza ("Petitioner" or "Mr. Martínez") respectfully submits this memorandum of law in support of his application for an order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in a foreign proceeding by serving a subpoena on Citibank USA, the King Baudouin Foundation, BBVA Compass Bank, J.P. Morgan Chase Bank, N.A., Wells Fargo, Standard Chartered Bank U.S., Bank of America, N.A., The Bank of New York Mellon, Northern Trust International Banking Corporation, Deutsche Bank Trust Company of America, HSBC Bank USA, and UBS AG (collectively, the "Financial Entities").

## BACKGROUND

Petitioner is a victim of a multi-year investment fraud who seeks to discover documentary evidence located in this District that will aid his ongoing criminal action and contemplated civil action in Mexico.  *See* Declaration of Alejandro Martínez Araiza in Support of the *Ex Parte* Application for an Order to Conduct Discovery for Use in A Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (hereafter, the "Martínez Decl.") ¶ 2.  The fraud in question concerns The Non-Violence Project Foundation ("NVPF"), a non-profit organization founded in Geneva, Switzerland that operates world-wide to educate and encourage students on ways to solve conflicts peacefully, and NVPF's "National Office" in Mexico City, Mexico ("NVP Mexico").  *Id*. ¶¶ 12-13.  As shown more fully below and in the supporting documentation provided with this Application, Petitioner believes the Financial Entities, all of which are found in this District, maintain financial records that will help him uncover who at NVPF and NVP Mexico carried out the fraud and the whereabouts of Petitioner's stolen money.

## I.   MR. MARTÍNEZ'S INVOLVEMENT WITH THE NON-VIOLENCE PROJECT'S INVESTMENT SCHEME

In 2013, Mr. Martínez became acquainted with NVP Mexico's Director, Mauricio Morales Bermudez, who encouraged Mr. Martínez to participate in NVP Mexico functions and bid for

memorabilia that NVP Mexico auctioned off as part of its fundraising efforts.  Mr. Bermudez also connected Mr. Martínez by e-mail with other individuals who purported to be NVP Mexico employees, including "Adriana Jaques."  *Id.* ¶¶ 3, 18. As detailed below, Adriana Jacques was a contrived identity.

### A.     The First Agreement

In February 2016, Ms. Jaques e-mailed Mr. Martínez regarding an exclusive investment opportunity with NVPF, wherein Mr. Martínez would invest a certain sum of money to help fund NVPF's activities in exchange for full repayment of the investment with significant returns that were to be generated by the NVPF's activities.  *Id.* ¶ 20.  Ms. Jaques told Mr. Martínez that the program was not open to the general public and needed to be kept confidential.  *Id.* ¶ 20.  NVP Mexico represented that this investment opportunity was authorized and overseen by senior NVPF officials, including Mr. Jan. Hellman (NVPF's Founder and Chairman of the Board) and Ms. Yoko Ono (NVPF's Ambassador for Peace in the U.S.). *Id.* ¶¶ 4, 21.

Based on representations by NVP Mexico, Mr. Martínez signed the first investment contract (the "First Agreement") with NVPF on February 19, 2016.  *Id.* ¶ 22.  Under the First Agreement, Mr. Martínez agreed to transfer $200,000 USD in exchange for full repayment in one year, plus a 50% return, for a total re-payment of $300,000.  *Id.* ¶ 22.  NVPF promised that if it failed to meet the aforementioned payments, it would pay a high interest rate on any past-due payment and extra specialty items, including signed memorabilia and tickets to NFL events.  *Id.* The First Agreement purported to be signed by Ms. Jaques, Ms. Ono, and Mr. Hellman.  *Id.*  The same day, Mr. Martínez transferred $3,600,000 MXN (approximately $200,000 USD) to the BBVA Bancomer Account (MXN 012180014877308965) for the "Non-Violence Project Mexico" as specified in the First Agreement.  *Id.* ¶ 23.  Immediately upon execution of the First Agreement, Mr. Martínez received an email from someone purporting to be Ms. Ono from the e-mail account

2

yon@nonviolence.com that thanked Mr. Martínez for his involvement and commitment to NVPF.
*Id*. ¶ 24.

B.     **The Second Agreement**

On May 12, 2016, Mr. Martínez received another e-mail from yon@nonviolence.com that
asked if he would be willing to enter into a second investment agreement with NVPF.  *Id*. ¶ 25.
This e-mail stated that Ms. Ono would be appearing in Mexico City later that year to unveil the
"Knotted Gun" statute at Aztec Stadium and needed an investor to support the event.  *Id*.  This
information comported with public reports indicating that Ms. Ono would be visiting Mexico City
in September 2016 to participate in an NVP Mexico-sponsored event.  *Id*.

At or around this time, Mr. Martínez became increasingly concerned about the bona fides
of NVPF and NVP Mexico due to several occasions wherein NVP Mexico either wholly or
partially failed to deliver paid-for prizes. *Id*. ¶ 17. He communicated these concerns to Ms. Jaques
in writing and asked that he be removed as acting Director of NVP Mexico. *Id*. ¶ 18. On May 13,
2016, Mr. Martínez received an e-mail from yon@nonviolence.com that stated: "Miss Jaques told
me about your doubts and comments.  We are aware and I can ensure You that your investment
Will be always safe with us."  *Id*. ¶ 27.  Relying on these representations, on May 17, 2016, Mr.
Martínez signed the second investment contract with NVPF (the "Second Agreement").  *Id*. ¶ 28.

Under the Second Agreement, Mr. Martínez agreed to invest an additional $200,000 USD
in exchange for the full repayment in one year of the $400,000 he had invested in NVPF to date,
plus a 100% return on his investments (*i.e.*, a total re-payment of $800,000).  *Id*.  The Second
Agreement further provided that if NVPF failed to comply with these payment obligations, it
would offer Mr. Martínez a high interest rate on any past-due payment and memorabilia from Ms.
Ono's personal collection, among other items.  *Id*.  Like the First Agreement, the Second
Agreement was purportedly signed by Ms. Jaques, Ms. Ono, and Mr. Hellman, on behalf of NVPF.

*Id*.  The same day, Mr. Martínez transferred $3,600,000 MXN (approximately $200,000 USD) to the BBVA Bancomer Account (MXN 012180014877308965) for the "Non-Violence Project Mexico" specified in the Second Agreement.  *Id*. ¶ 29.

### C.     The Third Agreement

By January 3, 2017, NVPF had neither made any payments under the Second Agreement nor offered Mr. Martínez any of the memorabilia or tickets due and owing once NVPF failed to make the payment.  *Id*. ¶ 30.  Mr. Martínez sent an e-mail to Ms. Jaques to express concerns about these matters, and Ms. Jaques promptly responded by e-mail and confirmed that NVPF would fulfill its contractual obligations and deliver on outstanding paid-for items.  *Id*.  Shortly thereafter, NVP Mexico approached Mr. Martínez about a third investment agreement similar to the first two agreements.  *Id*. ¶ 31.  At the time, Mr. Martínez's concerns were assuaged by Ms. Ono's apparent involvement and backing of these agreements, given that she had publicly appeared in Mexico City at an NVP Mexico fundraising event in September 2016.  *Id*.

In reliance on the written assurances that appeared to be sent by Ms. Ono and others at NVP Mexico and NVPF, Mr. Martínez entered into a third investment contract with NVPF (the "Third Agreement") on January 26, 2017.  *Id*. ¶ 32.  Under the Third Agreement, Mr. Martínez agreed to invest an additional $300,000 USD in exchange for the full repayment of this principal plus a guaranteed 25% return on the investment by March 20, 2017 (*i.e.*, a re-payment of $375,000).  *Id*.  The Third Agreement further provided that if NVPF failed to perform its payment obligations it would provide Mr. Martínez with music and sports memorabilia.  *Id*.  That same day, Mr. Martínez transferred $6,600,000 MXN (approximately $300,000 USD) to the BBVA Bancomer Account (MXN 012180014877308965) for the "Non-Violence Project Mexico" specified in the Third Agreement.  *Id*. ¶ 33.

## II.     NVPF PROMISES RE-PAYMENT BUT FAILS TO DELIVER

On March 15, 2017, Mr. Martínez received an e-mail from "Dimitri Tsaisev," a man who identified himself as a "Special Account Manager" with NVPF, and utilized the email address dimitri@nonviolence.com.  *Id.* ¶ 34. As detailed below, like Ms. Jacques, Mr. Tsaisev was a fictitious entity. Mr. Tsaisev informed Mr. Martínez that he was responsible for managing NVPF's investor accounts and preparing the re-payments under these accounts.  *Id.*

The following day, Mr. Tsaisev informed Mr. Martínez by e-mail that he needed to double-check the account details in order to effectuate a payment transfer from NVPF's accounts at UBS and CitiBanamex.  *Id.* at ¶ 35.  On March 22, 2017, Mr. Tsaisev sent electronic copies of receipts purporting to represent that NVPF had attempted to transfer $2,115,000 MXN (approximately $115,000 USD) and $6,697,000 MXN (approximately $360,000 USD), respectively, from an account it maintains at Banque Cantonale du Valais/Walliser Kantonalbank in Switzerland to bank accounts in Mexico that Mr. Martínez controls.  *Id.*  On April 5, 2017, Mr. Tsaisev notified Mr. Martínez that the payments were supposedly held up by Mexican authorities based on their size and concern about money laundering.  *Id.*  Mr. Tsaisev promised to issue outstanding payments in smaller quantities or transfer funds directly from NVP Mexico's bank account (with CitiBanamex and BBVA Bancomer) in order to avoid cross-border issues in the future.  *Id.*  On May 3, 2017, Mr. Tsaisev forwarded a notification statement that purported to provide proof that NVPF had made a payment of $15,700,000 MXN (approximately $850,000 USD) from its UBS AG account in Switzerland to a bank account in Mexico controlled by Mr. Martínez.  *Id.* at ¶ 37.

Mr. Martínez never received these payments.  *Id.* a¶ 39.  On May 8, 2017, Mr. Martínez informed Mr. Tsaisev that if all transfers were not promptly completed, Mr. Martínez would file a formal complaint against him, Mr. Hellman and Ms. Ono.  *Id.*  On May 26, 2017, Mr. Martínez received an email from yon@nonviolence.com apologizing for the delay.  *Id.* ¶ 40.

On June 7, 9 and 14, 2017, respectively, Mr. Martínez received three separate deposits totaling $3,000,000 MXN (approximately $125,000 USD) directly from an account he now believes was held personally by Mr. Bermudez (a Banamex account no. 012180701239546277). *Id*. ¶ 39.

On June 24, 2017, Mr. Martínez received another e-mail from that account suggesting Ms. Ono would place her "personal manager" in charge of the situation.  *Id*.

On June 26, 2017, Mr. Martínez sent a demand to yon@nonviolence.com for the immediate payment of the approximately $1.3 million USD owed by NVPF, not including interest and other damages.   *Id*.  ¶ 41.   Following this demand, Mr. Martínez received another e-mail from yon@nonviolence.com offering two proposals for repayment of approximately $1,400,000 USD. *Id*. ¶ 42.  Both proposals purported to put up certain of Ms. Ono's real estate holdings in New York City as security for re-payment.   *Id*.   These proposals continued to confirm Mr. Martínez's understanding that Ms. Ono was intimately involved with NVPF in New York City and had a personal interest in his investment.   *Id*.   On August 28, 2017, Mr. Martínez received another e-mail from yon@nonviolence.com that sent a SWIFT confirmation message of re-payment rendered via a Citibank USA account in the amount of $1,380,000 USD.  *Id*. ¶ 43.  Mr. Martínez never received this payment.  *Id*.

## III.    AN INVESTIGATION CONFIRMS FAKE IDENTITIES AND FORGED SIGNATURES

Soon after discontinuing communications with NVPF and NVP Mexico, Mr. Martínez hired a private investigator in Mexico who uncovered information that suggested Mr. Martínez had been the victim of an elaborate investment fraud perpetrated by NVPF and/or NVP Mexico insiders.  For example, the investigator uncovered that Adriana Jaques, Mariana Rider, and Dimitri Tsaisev were made-up identities.  *Id*. ¶¶ 44-45.  The investigator also uncovered that the NVP

Mexico-related bank account that received the three investments was controlled by Mr. Bermudez and that NVPF does not offer clients investment opportunities like those that NVPF and NVPF Mexico offered Mr. Martínez. *Id.* ¶¶ 45-46. And the investigator uncovered that the NVPF and NVP Mexico representatives' signatures on all three investment Agreements were likely forged. *Id.* ¶ 48.

In early 2019, Mr. Martínez engaged legal counsel in both Mexico and the United States to assist in gathering evidence for anticipated legal action. *Id.* ¶ 49. As part of these efforts, Mr. Martínez's U.S. counsel confirmed with Ms. Ono's legal representative and NVFP's Chairman and Founder Mr. Hellman that: (i) Ms. Ono's signatures on the Agreements was forged; (ii) she does not and has never maintained an e-mail account with the NVPF (specifically, yon@nonviolence.com); and (iii) she is not, and has never been, involved with the management or governance of NVPF at the international or local level. *Id.* ¶¶ 49-52.

## IV.   NVPF AND NVP MEXICO HAVE ATTEMPTED TO COVER UP THE FRAUD

In an attempt to uncover who perpetrated the fraud, Mr. Martínez's U.S. counsel further communicated with NVPF's upper management, including Mr. Hellman and Mr. Blaise Oberson (the Chief Executive Office of NVPF). *Id.* ¶ 54. In response, Mr. Hellman authored two letters on August 2, 2019 and September 16, 2019, that provided the following information:

- The e-mails Mr. Martínez received that purported to come from NVPF and NVP Mexico officials (yon@nonviolence.com, adriana@nonviolence.com, dimitri@nonviolence.com, and mariana@nonviolence.com) come from NVPF's internal e-mail server, indicating that whoever created and maintained those accounts was an NVPF or NVP Mexico insider;

- Ms. Jaques and Mr. Tsaisev are not and were never employees of NVP Mexico or NVPF, and there is no evidence that these identities are real;

- Ms. Ono has never had any role with NVPF other than as an "Ambassador for Peace," which involved attending certain NVPF events (such as the one in Mexico City on September 2016);

- The BBVA Bancomer account (ending in no. 8965) – the account to which Mr. Martínez sent his investment payments and that Mr. Bermudez controls – is an official bank account for NVP Mexico;

- NVP Mexico has a separate bank account with CitiBanamex (ending in no. 6277), which is also registered under Mr. Bermudez's name; and

- In 2014, Mexican authorities caught employees at NVP Mexico falsifying records in a similar manner to which NVP Mexico falsified records here.

*Id.* ¶ 55.

NVPF further confirmed that it maintains two financial accounts in New York City: (i) a retail checking account at Citibank; and (ii) an account with the King Baudouin Foundation in New York City in which NVPF solicits and receives transfers of money in U.S. dollars. *Id.* ¶ 57. Furthermore, NVPF promised to conduct an independent audit of NVP Mexico's activities. *Id.* ¶ 58. In December 2019, NVPF provided Mr. Martínez's counsel with a four-page "audit report" that indicated that his payments to NVP Mexico were not investments, but rather payments for debts that Mr. Martínez supposedly had with NVP Mexico. *Id.* ¶ 61. Obviously, Mr. Martínez owed no debt to NVP Mexico, and NVPF's investigation was a farce.

## V.    MEXICAN CRIMINAL PROCEEDING

The discovery Petitioner seeks will aid a criminal proceeding in Mexico. On May 6, 2019, Petitioner initiated criminal matter No. CI-FDF/T/UI 1/S/D/369/05-2019 with the Attorney General's Office in Mexico City against NVP Mexico and NVPF pursuant to Article 230 of the Mexican Criminal Code (the "Mexican Criminal Proceeding"). *Id.* ¶ 10. The Mexican Criminal Proceeding concerns the fraudulent activity that is the subject of this Application and remains ongoing. *Id.* ¶ 68.

The discovery that Petitioner seeks will aid the Mexican Criminal Proceeding in three ways. First, this information will help rebut NVP Mexico's and NVPF's position – as stated in the aforementioned December 2019 "audit report" – that NVP Mexico has provided requisite

consideration in exchange for the significant amount of money that Petitioner invested with them. *Id*. ¶ 70.  Second, this information will confirm the involvement of Mr. Bermudez and, potentially, other NVP Mexico officials in the aforementioned fraud.  *Id*.  Third, this information will identify the whereabouts of the stolen money. *Id.*

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits the United States District Courts to grant discovery for use in a foreign proceeding.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .   The order may be        made . . . upon the application of any interested person.

28 U.S.C. § 1782.  The goals of this statute are twofold: "to provide equitable and efficacious discovery procedures in the United States courts for the benefit of tribunals and litigants involved in international litigation, and to encourage foreign countries to provide similar means of assistance to [United States] courts."  *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (internal quotations and citations omitted).  "In pursuit of these twin goals, the section has, over the years, been given increasingly broad applicability."  *Id.*  (internal quotations and citations omitted).

When a court finds that the statutory requirements of 28 U.S.C. § 1782 are met, it may, in its discretion, grant an application for discovery.  The United States Supreme Court has articulated a number of factors the district courts should consider when weighing an application under Section 1782.  As set forth in greater detail below, all of these discretionary factors weigh in favor of granting Petitioner the requested discovery.

## I.  PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts are authorized to grant an application made pursuant to 28 U.S.C. § 1782 where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. 1KB Deutsche IndustriebankAG,* 673 F.3d 76, 80 (2d Cir. 2012).  Petitioner's application satisfies all three statutory requirements.

### i.  The Financial Entities reside or are found in this District

First, each of the Financial Entities resides or is found in this District and Petitioner's Application is specifically directed toward their respective presence in this District.  *See* Martínez Decl. ¶¶ 62-66.  Petitioner seeks records that should be held by the Financial Entities in the ordinary course of business, and which each of these entities should be able to easily produce in this District.  Specifically, Petitioner seeks discovery from Financial Entities found in this District as follows:

1)  Financial documents and information from Citibank USA and the King Baudouin Foundation, which are located in this District and which hold financial information for NVPF account and a personal account of Mr. Bermudez with Mexican affiliate CitiBanamex relevant to this matter, *id.* ¶ 63;

2)  Financial documents and information from correspondent financial institutions in this District, which have potentially processed U.S. dollar denominated transactions for the accounts held by NVPF and NVP Mexico, including: BBVA Compass Bank, J.P. Morgan Chase Bank, N.A., Wells Fargo, Standard Chartered Bank U.S., Bank of America, N.A., The Bank of New York Melon, Northern Trust International Banking Corporation, Deutsche Bank Trust Company of America, HSBC Bank USA, and UBS AG.  *Id.* ¶¶ 65-66; and

3)  Financial documents and information for the NVP Mexico BBVA Bancomer account from BBVA Compass Bank, the U.S. affiliate of BBVA Bancomer.  *Id.* ¶¶ 22, 28, 32, 54, 64.

With respect to number 3 above, while Petitioner recognizes BBVA Bancomer is not found in this District, Petitioner believes that BBVA Compass Bank, as the U.S. "affiliate" of BBVA Bancomer, may have possession, custody, or control of the various financial documents concerning the BBVA Bancomer account at issue.  It appears that BBVA Compass and BBVA Bancomer are not merely "affiliates," but rather one unified entity that operates globally.  For example, BBVA recently announced that it will "unify its brand" by changing its name to BBVA globally and discontinuing local names in Mexico (Bancomer), among other locations.  *See* BBVA Press Release, April 24, 2019, http://newsroom.bbvausa.com/2019-04-24-BBVA-to-unify-its-brand-worldwide-changes-its-logo.  BBVA Compass President and CEO Javier Rodríguez Soler indicated the importance of this change in noting that "[o]perating under a single brand further brings the power and strength of BBVA around the world to our clients here in the U.S."  *Id*.  This change also reflects BBVA's values, including the "We are one team" value, which allows BBVA customers "across all geographies" to take advantage of BBVA's services globally. *Id.*

Furthermore, the Second Circuit recently upheld a district court's discretion in allowing discovery of evidence located abroad from the US-based affiliate of a foreign bank.  *See In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019).  In *In re del Valle Ruiz*, the Second Circuit upheld the district court's order in granting discovery against Santander Investment Securities Inc. ("SIS") (the New York-based affiliate of Banco Santander S.A., a Spanish company), stating that "a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad."  *See In re del Valle Ruiz*, 939 F.3d at 533.  In so holding, the Second Circuit reasoned that akin to the Federal Rules of Civil Procedure, section 1782 authorizes extraterritorial discovery, "so long as the documents to be produced are within the subpoenaed party's possession, custody, or control."  *Id*.  Finally, having established that the district court had jurisdiction over SIS and

could grant discovery for evidence located abroad, the Second Circuit further held that the *Intel* factors weighed in favor of discovery against SIS.  *Id*. at 534 (analyzing all four factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004)).

It is believed that BBVA Bancomer uses the BBVA global network to process its USD denominated transactions.[1]  This is significant because BBVA US may have processed USD denominated transactions to or from NVP Mexico's Bancomer account, which received Petitioner's stolen money.  *See* Martínez Decl. ¶ 64.  If BBVA Bancomer used BBVA Compass to process U.S. dollar denominated transactions to NVPF that originated from Mr. Martínez's investments, then BBVA Compass would have maintained records of these financial transactions in the ordinary course of business and will have possession, custody, or control of the documents. Alternatively, BBVA US may have direct access to electronic records from NVP Mexico's Bancomer account by virtue of the shared global network.

### ii.     The discovery sought is for use in an ongoing proceeding in Mexico

Second, the discovery sought is for use in a foreign proceeding.  Specifically, the discovery will assist the Mexican Criminal Proceeding against NVPF and NVP Mexico.  *See id.* at ¶¶ 10, 68-70. An applicant in a criminal proceeding in Mexico is entitled to introduce evidence obtained from any source, including discovery from the United States. *See id*. at ¶ 68.

### iii.    Petitioner is also an interested person under Section 1782

Third, Petitioner is an "interested person" authorized to bring this application as the filing party in the Mexican Criminal Proceeding against NVP and NVP Mexico.  *See id.* ¶¶ 2, 10,

---

1 *See supra*, BBVA Press Release, April 24, 2019, http://newsroom.bbvausa.com/2019-04-24-BBVA-to-unify-its-brand-worldwide-changes-its-logo.

68-70.  Thus, Petitioner has satisfied each of the three requisite statutory elements necessary to permit this Court to order discovery under 28 U.S.C. § 1782.

## II.      THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE REQUESTED DISCOVERY ORDER

"Once the statutory requirements [of 28 U.S.C. § 1782] are met, a district court is free to grant discovery in its discretion."  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004).  To guide district courts in the decision to grant a section 1782 application, the Supreme Court has identified a number of factors that the district courts are to consider: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome.  *See In re del Valle Ruiz*, 939 F.3d at 533-34 (citing *Intel Corp.*, 542 U.S. at 264-65).  Here, all of these factors weigh in favor of granting Petitioner's application.

First, where, as here, discovery is sought from entities that are not participating in the foreign proceeding, the need for court-ordered discovery is apparent.  As the Supreme Court explained, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceedings may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel Corp.*, 542 U.S. at 264 (internal citations omitted).

The second factor identified by the Supreme Court—the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance—requires courts to consider

"(1) whether the United States' assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M 19-99, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006).   In weighing these elements, courts may only rely on "authoritative proof." *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1100 (2d Cir. 1995).   Here, there is no evidence that the discovery sought in this application would "offend" Mexico.   Nor is there any indication that the documents sought would be inadmissible in Mexico.   To the contrary, as set forth above, an applicant in a criminal proceeding in Mexico is entitled to introduce evidence obtained from any source, including discovery from the United States. *See* Martínez Decl. ¶ 68.   The discovery requested is comprised of ordinary business records held by the Financial Entities in the ordinary course of business.

The third factor also suggests that discovery should be granted, as this application is not an attempt to circumvent any foreign proof-gathering restrictions.   "[T]he burden is on the opponent of a § 1782 request to prove that the foreign court would reject the evidence obtained through § 1782." *In re Application of Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014); *see also Euromepa S.A.*, 51 F.3d at 1099-1100 ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.").   The discovery sought in this application does not, to Petitioner's knowledge, violate any restrictions under Mexican law on evidence gathering.

Finally, this application is not burdensome.   The bank records sought here are routinely sought and produced under 28 U.S.C. § 1782 petitions.   *See, e.g., In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *5 (ordering production of bank records, including wire transfers,

pursuant to § 1782); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intern. (USA) Ltd.*, 785 F.Supp.2d 434, 437 (S.D.N.Y. 2011) (granting § 1782 petition seeking disclosure of account statements, account opening materials, customer files, and due diligence materials); *In re del Valle Ruiz*, 939 F.3d at 533 (upholding the district court's order permitting discovery from a foreign affiliate regarding financial status, including documents relating to liquidity positions and both the private-sale and government-sale processes).

## III.    THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*

The Court should grant Petitioner's application *ex parte*.  *Ex parte* applications under 28 U.S.C. § 1782 are routine in this district.  *See, e.g., In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, 15-mc-417 (LAK) 2016 WL 702327, at *5 (S.D.N.Y. Feb. 18, 2016); *In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 Misc. 397, 2014 WL 7232262, at *5 (S.D.N.Y. Dec. 10, 2014).  As noted by Judge Kaplan:

> Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte.*  Where, as here, the application is for the issuance of subpoenas, no substantial rights of the subpoenaed person are implicated by such action, as the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas.

*In re Chevron Corp.,* No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010).  The Financial Entities will not be prejudiced by granting Petitioner's application *ex parte* as they will have an opportunity to challenge the discovery Petitioner is seeking once it is served.

## <u>CONCLUSION</u>

For the foregoing reasons, Petitioner respectfully requests that the Court endorse the Proposed Order attached to the *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to

Conduct Discovery for Use in A Foreign Proceeding ("Application") as Exhibit A, to serve the subpoenas attached to the Application as Exhibit B.

Respectfully submitted this 29th day of May 2020.

**BAKER & HOSTETLER LLP**

*/s/ Marco Molina*

Marco Molina
mmolina@bakerlaw.com
Tatiana Markel
tmarkel@bakerlaw.com
Oren Warshavsky
owarshavsky@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Tel.: 212.589.4200
Fax: 212.589.4201
*Attorneys for Petitioner*